

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

December 1, 2021

**BY ECF**

Honorable Denise Cote
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

    Re:    *United States v. Marc Demane Debih*,
            18 Cr. 184 (DLC)

Dear Judge Cote:

        The Government respectfully submits this letter in connection with the sentencing of defendant Marc Demane Debih (the "defendant" or "Demane"), which is currently scheduled for December 10, 2021 at 3:00 p.m. Demane provided prompt and substantial assistance in the Government's investigation into a widespread and prolific international insider trading ring that operated in, among other locations, the United States, the United Kingdom, France, Switzerland, Greece, Israel, and Hong Kong. In light of his cooperation, and assuming that he continues to comply with the terms of his cooperation agreement and commits no additional crimes before sentencing, the Government intends to move at sentencing, pursuant to Section 5K1.1 of the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G."), that the Court sentence Demane in light of the factors set forth in Section 5K1.1(a)(1)-(5) of the Guidelines.

## Background

1. **The Underlying Criminal Conduct**

        The charges in the indictment stem from Demane's participation in a widespread international insider trading ring that operated in multiple continents. In particular, insiders in the ring (some of whom worked at investment banks and one of whom was the son of a member of the board of directors of a pharmaceutical company) stole material, non-public information ("MNPI") relating to upcoming corporate announcements, and then sold that MNPI to tippees, who either executed timely, profitable securities trades themselves based on that MNPI or passed that MNPI to others, who in turn executed timely, profitable securities trades. In particular, the defendant paid millions of dollars to various individuals in exchange for inside information about numerous corporate announcements. Demane himself made approximately $70 million in profits from his insider trading, and he paid a portion of that money to his sources and to middlemen who obtained the information for him. Demane also passed along some of the stolen MNPI to other criminal associates, who themselves used it to make millions of dollars of profits.

Demane began trading securities in approximately 2005 or 2006 while living in Geneva. (Tr. 278, 282).[1] During that period, Demane became exposed to insider information and came to believe that some of his associates in Geneva had access to inside sources of MNPI. In approximately 2009, Demane moved to London in an attempt to cultivate his own sources of inside information. (Tr. 300). The first time he personally obtained inside information from a source was in 2008 or 2009, when he obtained inside information about a mining company from an investment banker but he did not execute any trades based on that information. (Tr. 301-02). Later, in 2010 and 2011, Demane was able to figure out the identities of certain clients of his investment banker girlfriend, and he traded based on that information and also passed the information to his friend and business associate George Nikas ("Nikas").

Beginning in approximately 2013, Demane began more extensively trading based on inside information, principally from three sources. First, Nikas provided Demane with MNPI about Ariad Pharmaceuticals, a U.S. pharmaceutical company, in 2013. That MNPI was obtained from Telemaque Lavidas, who had access to the MNPI by virtue of his father's position on the board of Ariad. Demane traded based on that information and also provided the information to a series of other securities traders in Europe, who collectively earned substantial profits when they traded based on that MNPI. Among those traders were Dov Malnik ("Malnik") and Tomer Feingold ("Feingold").

Second, a French national named John Dodelande provided Demane with MNPI on over 15 corporate transactions. That MNPI was originally misappropriated by investment bankers who were working on those transactions, and who sold the MNPI to Dodelande. In turn, Dodelande sold that MNPI to Demane in the period from the end of 2012 through late 2015. Demane estimates that he paid Dodelande more than $12 million for that MNPI. Demane and Dodelande communicated by unregistered, pre-paid "burner" phones during the course of their illicit relationship in order to avoid detection. Demane provided some of the MNPI he received from Dodelande to Malnik, Feingold, and Nikas. Malnik and Feingold paid Demane for the MNPI he passed to them, including by sending wires from their nominee companies to Demane's nominee companies, accompanied by false invoices, in order to conceal the source and purpose of the funds. Demane communicated with Malnik and Feingold using burner phones too.

Demane also obtained MNPI from former Goldman Sachs investment banker Bryan Cohen. Demane first met Cohen in 2014, and came to a similar arrangement with Cohen as he had with Dodelande, wherein he paid Cohen money for MNPI about corporate transactions that Cohen was privy to by virtue of his work. Cohen provided stolen information about a handful of corporate transactions to Demane, and Demane used that information to place profitable trades. Demane also communicated with Cohen through burner phones and other forms of coded communication intended to conceal their wrongdoing.

---

[1] References to "Tr." are to the transcript of the defendant's testimony at the January 2020 trial in *United States v. Lavidas*, 19 Cr. 716 (DLC).

2. **Procedural History**

Demane was charged on June 13, 2018 in indictment S3 18 Cr. 184 (DLC) (the "Indictment") in thirty-eight counts, including one count of conspiracy to commit securities fraud and fraud in connection with a tender offer, in violation of Title 18, United States Code, Section 371; one count of conspiracy to commit wire fraud and securities fraud, in violation of Title 18, United States Code, Section 1349; fifteen counts of securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff; Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.15b5-2; and Title 18, United States Code, Section 2; five counts of fraud in connection with tender offers, in violation of Title 15, United States Code, Sections 78n(e) and 78ff; Title 17, Code of Federal Regulations, Sections 240.14e-3(a) and 240.14e-3(d); and Title 18, United States Code, Section 2; fifteen counts of wire fraud, in violation of Title 18, United States Code, Sections 1343 and 2; and one count of securities fraud, in violation of Title 18, United States Code, Section 1348.

On October 31, 2018, Demane was arrested in Serbia pursuant to a request from U.S. authorities. He was extradited to the United States on May 10, 2019, and pled guilty to the Indictment pursuant to a cooperation agreement on October 3, 2019. Demane was detained in a Serbian jail while pending extradition, and was then detained in the Metropolitan Correctional Center in Manhattan from the time of his extradition until January 28, 2020, when he was released on bail conditions.

### Guidelines Calculation

The Government believes that the Guidelines apply to the defendant's conduct as follows: Pursuant to United States Sentencing Guideline ("U.S.S.G.") § 3D1.2(d), Counts One through 38 are grouped together because the offense level for each of those counts is determined largely on the basis of the total amount of loss. As each of those counts is based on insider trading conduct, the most applicable guideline is U.S.S.G. § 2B1.4. Pursuant to U.S.S.G. § 2B1.4(a), the base offense level is 8. Pursuant to U.S.S.G. §§ 2B1.4(b)(1) and 2B1.1(b)(1)(M), because the gain from the offense is more than $65 million but less than $150 million, 24 levels are added. Pursuant to U.S.S.G. §§ 3E1.1(a) and (b), because the defendant demonstrated acceptance of responsibility for the offense and assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, the offense level is decreased by three levels. Accordingly, the total offense level is 29.

The defendant has no prior convictions, therefore his Criminal History Category is I. Accordingly, the applicable Guidelines range is 87 to 108 months of imprisonment.

### The Defendant's Cooperation

Since his arrest, Demane has provided prompt and substantial cooperation to the Government. Due to Demane's cooperation, the Government has been able to charge, arrest, and convict numerous participants in the above-described international criminal network.



[2]

Demane was arraigned before the Honorable Vernon S. Broderick on May 10, 2019, ▮ ▮. Demane participated in well over a dozen detailed profession sessions during which he discussed his participation in and historical knowledge of insider trading, including detailed information about many of his criminal associates. Demane's cooperation was particularly helpful because he provided information not just about the conduct that the Government had already uncovered and charged, but also deals and individuals that the Government had not yet charged. The Indictment in which Demane was charged reflected insider trading in deals where he received MNPI from John Dodelande. Through numerous proffers, Demane both provided detailed information about his participation in those deals, as well as deals where he received information from Nikas and Cohen. In addition, Demane described providing MNPI to a number of additional securities traders, including Malnik and Feingold. Demane also provided the Government with paper records and electronic devices that contained substantial amounts of evidence of his criminal conduct as well as the criminal conduct of his co-conspirators. These records were valuable sources of proof and corroboration to enable the Government to pursue additional investigation and prosecution of members of this criminal network. Demane also testified at the trial of Telemaque Lavidas in January 2020, in *United States v. Telemaque Lavidas*, 19 Cr. 716 (DLC).

---

[2] The Government has marked certain portions of this letter for redaction at the request of the defense, and is submitting this letter to the Court in advance of sentencing with the request that it be maintained under seal in order to permit the defense to request that it be filed under seal.

## **Section 5K1.1 Factors**

Section 5K1.1 of the Guidelines sets forth five non-exclusive factors that sentencing courts are encouraged to consider in determining the appropriate sentencing reduction for a defendant who has rendered substantial assistance, including the significance and usefulness of the assistance; the truthfulness, completeness, and reliability of the defendant's information and testimony; the nature and extent of the assistance; any injury suffered, or any danger or risk of injury to the defendant or his family resulting from her assistance; and the timeliness of the assistance. The application of each of those factors to Demane's cooperation is as follows.

1. *"[S]ignificance and usefulness" of assistance*

The significant and usefulness of Demane's assistance was extraordinary. At the time he was arrested in Serbia, the Government had made substantial progress investigating the tipping chain that began with two investment bankers in London, who provided MNPI to Dodelande and then to Demane. But the Government had only limited information about other sources of MNPI that Demane received and other tippees who received MNPI from this scheme. Based in large part on information that Demane provided through his proffers, the Government was able to substantially advance its investigation of Nikas, Lavidas, Cohen, Malnik, and Feingold. Ultimately, and again based in large part on information provided by Demane, the Government was able to obtain indictments of those five individuals. To date, three—Lavidas, Cohen, and Malnik—have been arrested and convicted.

As noted above, Demane also provided testimony at the trial of Lavidas, where he testified credibly about the Ariad insider trading scheme described above. Demane's testimony was an important component of the Government's case against Lavidas, who was ultimately convicted and sentenced to one year of imprisonment.

Cohen pled guilty on January 7, 2020, and was sentenced by the Honorable William H. Pauley III to time served with supervised release consisting of one year of home confinement. Malnik pled guilty in June 2021 and was sentenced by the Honorable Victor Marrero to 30 months of imprisonment.

2. *"[T]ruthfulness, completeness, and reliability" of information and testimony*

Demane was fully forthcoming and candid in his dealings with the Government. The information he provided about his own conduct and the conduct of his criminal associates was credible and corroborated.

3. *"[N]ature and extent" of assistance*

As set forth above, the defendant's cooperation was extensive, and ranged from providing historical detail about the scheme in which he was originally charged in the Indictment (*i.e.*, insider trading based on MNPI provided by John Dodelande) to providing information about other insider trading schemes (*i.e.*, insider trading with Nikas and Lavidas, Cohen, and Malnik and Feingold). In addition, the defendant obtained a box of hard copy

documents and electronic devices that he kept in Switzerland, and provided that box to the Government. That information provided substantial corroboration for the information Demane provided about the various insider trading schemes he was involved in.

4. *"[A]ny injury suffered, or any danger or risk of injury to the defendant or his family" resulting from assistance*

Throughout his cooperation, Demane has expressed concerns about his safety to the Government. While the Government is not aware of any actual violence that has been employed in connection with the above-described scheme, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Accordingly, Demane expressed that he was scared of potential repercussions of his cooperation and testimony. In particular, given that his wife and two young children were residing overseas without him, Demane expressed serious and understandable concern about their safety. Nevertheless, Demane continued to cooperate, even including his public testimony at the Lavidas trial. The Court should take these concerns and actions into account in giving Demane appropriate credit for his assistance to the Government.

5. *"[T]imeliness" of assistance*

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. He began proffering with the Government very shortly after arriving in the United States. Even after Demane received bail, he always conveyed a willingness to meet with the Government as needed, and on short notice, in order to be of timely assistance with continuing aspects of the case. Demane's quick cooperation enabled the Government to obtain indictments of Lavidas, Nikas, Cohen, Malnik, and Feingold.

## Conclusion

In light of the facts set forth above, and assuming that Demane continues to comply with the terms of his cooperation agreement, and commits no additional crimes before sentencing, the Government intends to request at sentencing, pursuant to Section 5K1.1 of the Sentencing Guidelines, that the Court sentence Demane in light of the factors set forth in Section 5K1.1 of the Guidelines.[3]

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

by: __/s Richard Cooper_____
Richard Cooper/Daniel Tracer
Assistant United States Attorneys
(212) 637-1027 / 2329

cc:   Defense counsel (by email)

---

[3] The Government has also received a restitution request from Takeda Pharmaceuticals U.S.A., Inc., the successor company to Ariad Pharmaceuticals, Inc. ("Takeda"), and for the reasons contained therein, the Government respectfully requests that the Court order Demane to pay restitution to Takeda in the amount of $186,430.99, jointly and severally with Telemaque Lavidas as ordered in *United States v. Telemaque Lavidas*, 19 Cr. 716 (DLC). Takeda's restitution request is attached hereto as Exhibit A. The Government will confer with defense counsel and will provide the Court with a proposed restitution order prior to sentencing.