LCABDEBS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

        v.                              18 Cr. 184 (DLC)

MARC DEMANE DEBIH,

                  Defendant.

                                           Telephone Conference
------------------------------x

                                           New York, N.Y.
                                           December 10, 2021
                                           3:00 p.m.

Before:

                      HON. DENISE COTE,

                                   District Judge

                           APPEARANCES

DAMIAN WILLIAMS
     United States Attorney for the
     Southern District of New York
BY: RICHARD A. COOPER
     DANIEL M. TRACER
     Assistant United States Attorneys

KOBRE & KIM, LLP
     Attorneys for Defendant
BY: SEAN S. BUCKLEY
     JEFFREY O. NEWTON
     STEVEN G. KOBRE

1              (Case called)
2              MR. COOPER:  Good afternoon, your Honor.
3              Richard Cooper for the government.  Also on the line
4    are my colleague Daniel Tracer, as well as FBI Special Agents
5    Matthew Mahaney (ph) and Robert Humshire (ph).
6              Good afternoon.
7              THE COURT:  Good afternoon.  Is defense counsel ready
8    to proceed?
9              MR. BUCKLEY:  Yes, your Honor.
10             On behalf of Mr. Debih, Sean Buckley, Steven Kobre and
11   Jeffrey Newton, from Kobre & Kim, and Mr. Debih is joined with
12   us on video, Judge.
13             THE COURT:  And, Mr. Debih, are you ready to proceed?
14             THE DEFENDANT:  Yes, your Honor.
15             THE COURT:  Let me set the stage for how we're
16   proceeding today.  We're in the middle of a worldwide pandemic.
17   We're all speaking from different locations.  Defense counsel
18   are together, but the government, the defendant and I are all
19   in different locations.  I'm at my courthouse.  The defendant
20   has consented, as I understand it, to proceed through a
21   videoconference facility.  He lives abroad and would be
22   required to travel during the pandemic, which for many reasons
23   is discouraged these days.
24             Am I right, you wish to proceed through a
25   videoconference facility?

1            MR. BUCKLEY:  That is correct, your Honor.
2            THE COURT:  Again, who is speaking?
3            MR. BUCKLEY:  Sean Buckley, on behalf of Mr. Debih.
4            THE COURT:  Thank you, Mr. Buckley.
5       Mr. Debih, did you hear what I said and what your
6   lawyer just told me, is it true that it's your preference to
7   proceed through this sentence through a videoconference?
8            THE DEFENDANT:  Yes, your Honor.
9            THE COURT:  Thank you.
10       And, Mr. Debih, can you see me?
11            THE DEFENDANT:  Yes, your Honor.
12            THE COURT:  Can you see and hear your attorneys?
13            THE DEFENDANT:  Yes, I do, your Honor.
14            THE COURT:  Thank you.  Can you see and hear
15   government counsel?
16            THE DEFENDANT:  Yes, I do, your Honor.
17            THE COURT:  Thank you.  I find under the circumstances
18   it is very much in the interest of justice to proceed as we are
19   today through a videoconference facility, and it would
20   significantly impair the interest of justice to delay sentence
21   further.
22       There's a strong public interest in knowing what
23   sentence is imposed today.  The defendant also has a strong
24   interest in knowing whether a term of incarceration will be
25   imposed and how long that term of incarceration would be if it

LCABDEBS

were imposed.  For all these reasons, I find it appropriate to proceed as we are today.

         Mr. Cooper, is there anything else that you wish to place on the record pursuant to the CARES Act?

         MR. COOPER:  No, your Honor.  Thank you.

         THE COURT:  Let me ask you, Mr. Buckley, have you and your client both read the presentence report?

         MR. BUCKLEY:  We have, your Honor.

         THE COURT:  Have you discussed it with each other?

         MR. BUCKLEY:  Yes, we have, at length, your Honor.

         THE COURT:  Do you have any objection to the report, other than what you described to me in the written sentencing submission?

         MR. BUCKLEY:  The only objection, your Honor, was the one we noted that is noted in the presentence report itself. But beyond that, no, Judge.

         THE COURT:  Thank you.  The presentence report is made a part of the record in this case and placed under seal.  If an appeal is taken, counsel on appeal would have access to the sealed report without further application to this Court.

         There was a forfeiture order entered in this case on January 14 of 2020.  That forfeiture order is made part of the sentence in this case.  I have a consent order of restitution as well.  It's imposed jointly and severally against the defendant and also Telemaque Lavidas.  It requires the

1  defendant to pay an amount of $93,215.50 within 90 days.  I
2  have a document signed by both defense counsel and the
3  government on December 10.
4        Any reason, Mr. Buckley, why I should not sign this
5  order of restitution right now?
6        MR. BUCKLEY:  No, your Honor.  We have discussed it
7  with Mr. Debih.  He understands its contents.  As we indicated
8  in our submission to the probation office, we would agree to
9  abide by it.
10        THE COURT:  Fine.  I order restitution in that amount
11  to be paid within 90 days.  The presentence report arrived at a
12  calculation of an offense level of 32 with a Criminal History
13  Category of I, and a guidelines range of 121 to 151 months.
14  The parties took issue with the probation department's
15  calculation of the sentencing guidelines; however, they note
16  that the disagreement is somewhat technical because the
17  probation department itself recommends a sentence of time
18  served.  And that is also the sentence that the defendant is
19  seeking in this case.
20        I've reviewed the legal issues associated with the
21  calculations of the sentencing guidelines and arrived at the
22  decision that the correctly calculated guidelines are 87 to 108
23  months pursuant to an offense level of 29 and a Criminal
24  History Category of I.  I expect the government to be making a
25  motion pursuant to 5K1.1 in a moment.

1    I note that Mr. Lavidas who was convicted at the trial
2    during which Mr. Debih testified received a sentence from me of
3    a year and a day.  Mr. Lavidas's father who was not at trial
4    appeared a principal wrongdoer and participate in the scheme
5    that was at issue at that trial, and another participate in the
6    overarching insider trading scheme, Mr. Malnik, has received a
7    sentence of 30 months from a colleague on my bench.
8    I'll hear from the government and then defense
9    counsel.
10   MR. COOPER:  Thank you, your Honor.
11   The government does move pursuant to 5K1.1.  I'm not
12   going to repeat the points that we set forth in our sentencing
13   letter.  I would like to make a few additional observations
14   that in some ways amplify a few of those points.
15   First, as far as cooperating witnesses in cases such
16   as this go, Mr. Debih's cooperation was quite extraordinary.
17   The timeliness issue is set out in our sentencing memorandum,
18   and I'm not going to repeat those points here today unless the
19   Court has particular questions.
20   I do want to note -- and we mentioned this, but just
21   to make sure that it's clear -- Mr. Debih was charged in an
22   indictment with insider trading in connection with a series of
23   deals where there were two insiders who worked at investment
24   banks in London.
25   When he came in and began proffering with us, he told

us about extensive additional conduct involving himself and others.  Now some of that conduct the government had already been investigating.  Some of that conduct was new to us.  But with respect to both of those buckets, both the conduct we had been investigating and the conduct that was new to us, Mr. Debih's cooperation was of great assistance in getting us to the point where we could seek and obtain indictments of those additional people.

And that includes the portion of the indictment that was at trial before your Honor in January of 2020 involving insider trading in connection with the Ariad company.  I won't go over those details.  Your Honor is well aware of that case.

The second bucket is insider trading based on inside information that Mr. Debih received from Goldman Sachs's investment banker Ryan Cohen, who was subsequently arrested and pled guilty before Judge Pauley.

The third was downstream insider trading by Dov Malnik and Tomer Feingold.  Those were two individuals who Mr. Debih tipped with insider information about a series of things.  Mr. Malnik pled guilty, and as your Honor noted has been sentenced.

Mr. Feingold is currently a fugitive.  But with respect to that whole suite of cases, those were all individuals involved in insider trading with Mr. Debih, who were not charged in his indictment when he was arrested in

1  Serbia, and whom the government was able to secure indictments;
2  and in many cases, convictions of.
3            The second global point I'd like to make here is
4  crimes like insider trading in general are difficult to detect
5  and to prosecute; but here, that concern is magnified.  The
6  conduct was international in scope.  There were insiders,
7  middlemen and traders located around the globe, and the
8  participants in this scheme took substantial steps to evade
9  detection, including using disposal prepaid burner telephones
10 and using encrypted applications on their phones to communicate
11 in ways in an attempt to frustrate law enforcement.  So the
12 typical concerns about detecting and prosecuting the conduct
13 are only magnified here.
14           In a situation like that, securing the assistance of
15 someone like Mr. Debih is a substantial help to law enforcement
16 because these schemes by their nature -- and this one in
17 particular -- are extraordinarily difficult to unravel and to
18 prosecute.
19           Two other points, your Honor, before I stop.  One is
20 as noted in the submissions, there was a substantial amount of
21 press attention that was given to the investigation and also to
22 Mr. Debih in particular, despite the difficulties of
23 cooperating while he was in jail, while he was separated in
24 jail in this country from the people closest to him, he
25 maintained his commitment.

1      And the last point I want to make before, of course,
2  answering whatever question the Court has, on a personal note,
3  Mr. Debih was always respectful and complete in his dealings
4  with us.  We did day long proffer sessions on complicated
5  issues of trading at a time when Mr. Debih was detained at the
6  MCC, and he was always unfailingly polite, attentive and
7  responsive in all of those interactions.  So that's what I
8  wanted to communicate to your Honor.  I'm happy to answer any
9  questions the Court has.
10             THE COURT:  Thank you, Mr. Cooper.
11             Mr. Buckley.
12             MR. BUCKLEY:  Yes.  Thank you, your Honor.  So much
13  like Mr. Cooper, I don't intend to belabor the points that we
14  laid out in our sentencing submission.  We tried to get the
15  Court as much information as we could, and that is why we
16  provided such a detail sentencing submission and I have every
17  confidence that your Honor has reviewed that.
18             THE COURT:  Mr. Buckley, I'm going to interrupt.  I
19  forgot.  I didn't list all the documents I've received and
20  reviewed.  I have the sentencing memo from the defendant with
21  attachments, and that memorandum is dated December 3.  I have
22  the government's sentencing submission of December 1.  I have a
23  letter from defense counsel of December 7, and I think that's
24  the complete set of submissions.
25             Thank you, Mr. Buckley. Sorry to interrupt.

1          MR. BUCKLEY:  No problem, your Honor.  We agree that
2     that is the complete set of submissions.  So now having gone
3     through those, we don't intend to go into a lot of detail that
4     has already been covered.  Both because it would be repetitive
5     and waste the Court's time, but also because as your Honor
6     knows, much of the information in those submissions has been
7     subject to redactions because of the nature of Mr. Debih's
8     cooperation, but also *Giglio* and other concerns.
9          The first point I wanted to address with your Honor,
10    which I think dovetails with what the government had said, is
11    when you look at Mr. Debih's cooperation here, I think the
12    government used the appropriate term in describing it as
13    nothing short of extraordinary.
14         And I just want to highlight that because what
15    Mr. Debih has done in this case is really what the Court had
16    described as one of the core principles of cooperation and one
17    of the reasons why it is so central and important to the
18    justice system, but also why it is something critical for a
19    Court to consider in imposing sentence.
20         So in particular, Judge, I'm referencing your Honor's
21    opinion in the *Fernandez* case where the Court noted that
22    cooperation is important because of what light it might shed on
23    the character of a defendant, whether it showed the defendant
24    has recognized the full implications of the choices they made
25    in the past, and whether they have decided to make a clean and

1  full break with that and change their life in a significant
2  way.
3            Judge, respectfully, we submit that everything about
4  Mr. Debih's cooperation addresses each of those factors that
5  the Court has noted are for consideration with respect to
6  cooperation.  Mr. Debih here has been very, very clear, both in
7  his proffers with the government, in his submission to the
8  Court, and I expect you will hear a brief statement from
9  Mr. Debih where he makes clear and expresses the extent of his
10 remorse.  Not just for himself, not just for the situation he's
11 in, but genuine remorse as it relates to the government, the
12 Court, and most importantly his family.
13           I think all the points that Mr. Cooper made, we
14 certainly join in, but we would ask the Court to view those
15 points through the prism of the analysis in *Fernandez* and
16 understand just how far it is that Mr. Debih has come.  And in
17 that regard, there really were two decision points in
18 Mr. Debih's life that I think very clearly establish both his
19 remorse and his decision to make a clean break from his past.
20           The first decision point was the birth of his
21 daughter.  This was before he was confronted or approached by
22 law enforcement, and that event had extreme impact on
23 Mr. Debih, such that at that time he decided he wanted to make
24 a break.
25           At that time, without facing the specter of

1    prosecution or charges, he decided that he was going to change
2    his ways, and that is the first decision point as far as he's
3    concerned.
4              Now the second decision point, of course, relates to
5    his decision to cooperate in this investigation.  After being
6    arrested and charged and understanding the full scope of what
7    it was that he was facing, Mr. Debih made the decision for
8    himself and for his family to solidify and cement that break
9    that he had decided a year before and to cooperate with
10   authorities.
11             I just highlight that Mr. Debih's cooperation truly
12   does demonstrate in this case I think to an extraordinary level
13   his recognition of the implications of the choices that he made
14   in the past and his desire to take a turn and move away from
15   those choices and repair the harm that he has caused.
16             Mr. Cooper detailed the scope and nature of
17   Mr. Debih's cooperation.  So unless the Court has specific
18   questions, I'm not intending to go into that beyond the fact
19   that, as Mr. Cooper noted, Mr. Debih's cooperation extended
20   well beyond the four corners of the indictment, with which he
21   was charged, and his cooperation extended well beyond the
22   individuals named in that indictment.
23             Related to that is -- I'm going to have to talk around
24   things a little bit here, your Honor.  We did highlight this in
25   our submission because of the cooperation, because of the

completeness of the information that Mr. Debih provided, he is now also looking at the specter possibility of charges in other jurisdictions, of investigations in other jurisdictions.

He was aware at the time that he made the decision to cooperate that this was not just the possibility, but indeed a potential eventuality. And nevertheless recognizing that, recognizing the concerns for safety that Mr. Cooper highlighted, Mr. Debih was unfettered in his willingness to cooperate and to testify publically on behalf of the government.

And the last point I will make, your Honor, is with respect to the impact that Mr. Debih's conduct has had, and just how stark his recognition of that impact is which really truly contributes to his remorsefulness and his acknowledgment of wrongdoing and desire to make right.

But Mr. Debih was separated from his family effectively for approximately two years, just shy of two years. Now while pending extradition in Serbia, his wife has limited ability to visit with him, but he was separated from his young daughter throughout this period of time; and indeed didn't meet his second daughter until he was released on bail many, many months after her birth.

So Mr. Debih has recognized the difficulty that he has created for his wife on the one hand and his children who to this day he is continuing the process of trying to heal those

1    relationships and really get to know his children.

2             This is something that has been pivotal for Mr. Debih.
3    It is the center of his attention right now, and it is
4    something that he intends to and would like to continue to
5    repair those relationships, to continue to communicate with his
6    children.  Because despite it all and through it all, both his
7    wife and his children and his extended family have been
8    supportive of him.

9             We respectfully submit that with that support from his
10   family, the continued support that they have provided through
11   it all despite what they suffered as a consequence of
12   Mr. Debih's poor choice, we submit that the continued existence
13   and viability of that network is another reason that this Court
14   should feel comfortable that Mr. Debih has made and does not
15   intend to recidivate and intends to set a better example for
16   his wife, his children, his community as he moves forward.

17            I'll pause there to see if the Court has any
18   questions, but that's all I have to say about that.

19            THE COURT:  Thank you, Mr. Buckley.

20            Mr. Debih, is there anything you would like to say to
21   me on your behalf?

22            THE DEFENDANT:  First of all more than anything else,
23   I would like to apologize.  I owe an apology to the Court, to
24   the government and all the participants in the market that I
25   have harmed by my actions, and most of all I apologize to my

family, especially my wife and my kids.

I know that my actions only created pain in the society and many more, and I have to live with this through the rest of my life. I hope by accepting responsibility and by trying to make things right, as I've been doing, I can prove to my family, to the government and to the Court that I have changed and that my family can be proud of me as a husband, father, son-in-law and brother in-law.

I understand that my words cannot change the past, and I'm very sorry that this brought me here standing here in front of you, the Court.  I'm sorry, but for many reasons I'm thankful.  Despite what they have been going through, I'm very lucky to have my wife and my kids standing by my side, as well as my extended family that have support to my wife and children during this very difficult period that I've created.  They're not responsible for that. I'm only responsible for it.

The situation in my life, who I want to be and the example I have to show for my children, I'm grateful that the government has allowed me to make this right by cooperating.  I want to thank the Court for your Honor's attention to my case.

Finally, I would like to thank Mr. Obennie (phonetic), an officer at the MCC, who was kind enough to give me a job at the library during my detention, and I will remember him for that for the rest of my life.

Thank you, your Honor, for listening to me and for

1    your attention to this case.

2            THE COURT:  Thank you, Mr. Debih, for the statement.
3    Obviously, insider trading in commercial corruption of every
4    kind is a far-reaching crime with damage to society, not just
5    economic damage, but damage to the fabric of society destroys
6    trust, destroys trust in fellow human beings in their honor, in
7    their honesty.  It destroys trust in institutions and
8    businesses in the markets.  It undermines society in a way that
9    has far-reaching consequences.

10           Of course it also shows that people are selfish.  They
11   think only of themselves and money they can make, and cheating
12   others is part of the game.  All of that very distasteful and
13   very disreputable.  Mr. Debih engaged in this egregious conduct
14   for years and on a grand scale and in an international
15   environment harming the markets and the institutions in many
16   countries.

17           That said, he's paid a heavy price already for that
18   conduct.  He has spent difficult time in a Serbian prison
19   awaiting extradition, difficult time here in the MCC, and even
20   difficult time when released from the MCC, but having to be
21   isolated during this pandemic before he could be returned to
22   his family.

23           None of this was easy, but it was part of the
24   punishment that was richly deserved for the conduct in which he
25   engaged.  It would be inappropriate given the sentence imposed

on others to impose a further term of imprisonment on Mr. Debih.

He cooperated fully and completely as soon as he learned of the charges against him.  And as Mr. Buckley pointed out, that cooperation signals a break from past confederates in crime and a decision to take a different path in his life.  He showed that that decision was real by continuing to cooperate despite harsh conditions of incarceration and to his decision to publically testify at a trial where his cooperation would be widely known and appreciated by many.

Therefore, based on all I've read and all I have heard, I impose a term of imprisonment of time served to be followed by a term of supervised release of two years with the following special conditions:

The defendant shall pay restitution as I have ordered. He shall comply with our immigration laws.  He shall provide our probation department access to any and all requested financial information.  He shall pay a special assessment of $3,800.  I decline to impose a fine given his substantial obligation to make restitution and to pay forfeiture, and I impose a restitution payment schedule as described in the restitution order itself.

Counsel, is there any legal reason why I cannot impose the sentence I've described as stated?

Mr. Cooper.

LCABDEBS

1          MR. COOPER:  No, your Honor.
2          THE COURT:  Mr. Buckley.
3          MR. BUCKLEY:  No, your Honor.
4          THE COURT:  I order the sentence I've described on the
5    record as stated.  I don't believe there are open counts,
6    Mr. Cooper, am I right?
7          MR. COOPER:  That's correct, your Honor.
8          THE COURT:  I need to advise the defendant of his
9    right to appeal.  If you're unable to pay the cost of an
10   appeal, you may apply leave to appeal *in forma pauperis*.  Any
11   notice of appeal must be filed within 14 days of the judgment
12   of conviction.
13         Mr. Cooper, is there anything else we need to do?
14         MR. COOPER:  Not from the government.
15         Thank you, your Honor.
16         THE COURT:  Mr. Buckley.
17         MR. BUCKLEY:  Not from the defense.  Thank you, your
18   Honor.
19         THE COURT:  Thank you all.
20         (Adjourned)
21
22
23
24
25